UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PAUL REIFFER,

                         Plaintiff,

-vs-                                              Case No.  6:20-cv-786-RBD-GJK

WORLD VIEWS LLC,

                         Defendant.
_____

REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR ENTRY OF FINAL JUDGMENT OF DEFAULT AGAINST DEFENDANT WORLD VIEWS LLC AND INCORPORATED MEMORANDUM OF LAW (Doc. No. 15)** |
| **FILED:** | **October 6, 2020** |
| | **THEREON** it is **RECOMMENDED** that the **MOTION** be **GRANTED IN PART AND DENIED IN PART**. |

I.  **BACKGROUND**

On May 6, 2020, Plaintiff filed a complaint against Defendant alleging copyright infringement. Doc. No. 1. Plaintiff is a professional photographer. *Id.* at

¶ 2. He is "a Fellow of the British Institute of Professional Photography, an Associate of the Royal Photographic Society, [and] winner of the UN International Year of Light competition . . . ." Doc. No. 15-1 at 1. Plaintiff owns what he describes as "the 'world's most exclusive and remote gallery' in the Maldives, which is only accessible by seaplane or speedboat." *Id.* Plaintiff's images are "highly sought after and [he is] routinely commissioned for commercial work." *Id.* He creates images of "cityscapes, extreme locations, rooftops, heli-shoots, the arctic circle, and others . . . ." *Id.* Plaintiff states that he does "not grant licenses . . . ." *Id.* at 3.

In 2015, Plaintiff created the photograph titled 20150226-CF002095 (the "Work"). Doc. No. 1 at ¶ 10. On May 8, 2017, Plaintiff registered the Work with the Register of Copyrights and was assigned the registration number VA 2-044-621. *Id.* at ¶ 11. At all relevant times, Plaintiff was the owner of the copyrighted Work. *Id.* at ¶ 13.

Plaintiff created the Work using a Phase One XF iQ3/100 100 Megapixel Medium Format digital camera system valued at $60,000. Doc. No. 15-1 at 1. Regarding creating the Work, Plaintiff states the following in his declaration:

> Significant technical attributes were required to make the Work including[:] monitoring the environment with regard to atmospheric conditions, cloud cover, and seasonal

> weather; location scouting to identify potential photo
> locations; and using advanced photo techniques, both in-
> camera and via post-production software, to ensure a
> common brightness, contract, clarity, color temperature,
> color saturation, color tonality, and image noise reduction.

*Id.* at 2. The Work is considered scarce due to Plaintiff's unique technique in creating it and its high quality. *Id.*

Sometime after the work was created, Defendant copied the Work for use in advertising and promoting its business. Doc. No. 1 at ¶¶ 15, 18. Specifically, Defendant is a travel business and used the Work, a photograph of Dubai's cityscape at night, on its website above a description of a trip to Dubai. Doc. No. 15-1 at 12. Defendant was never licensed to use the Work and did not receive permission from Plaintiff to use it. Doc. No. 1 at ¶¶ 14, 16. Plaintiff states that he never licensed the Work for use online and that Defendant "obtained a use [Plaintiff] never allowed and never intended to allow."[1] Doc. No. 15-1 at 4. If Plaintiff had licensed the Work to Defendant, he would have charged Defendant $3,000 as a licensing fee, although this fee does not consider the scarcity of the Work.[2] *Id.* Plaintiff alleges that Defendant willfully copied, displayed, and

---

[1] Plaintiff's declaration contains the contradictory statements, "I offer licensing of the Work for online commercial use[,]" and "[t]hough I do not grant licenses and have made the professional and commercial choice to keep exclusivity of my Work, I would have charged World Views a licensing fee of $3,000 if I were to grant such a license for its use." Doc. No. 15-1 at 3.

[2] Absent from Plaintiff's declaration are any monetary amounts he received for his photography. Doc. No. 15-1 at 1-5.

distributed the Work, and made derivatives of the Work without Plaintiff's authorization in violation of 17 U.S.C. § 501. Doc. No. 1 at ¶¶ 26, 28. Plaintiff declares that Defendant's dissemination of the Work destroyed its exclusivity, and thus decreased its value because Plaintiff can no longer offer an exclusive license to it, thus rendering the Work an "orphan." Doc. No. 15-1 at 4. Plaintiff requests the following relief in the complaint:

> a. Defendant and its officers, agents, servants, employees, affiliated entities, and all of those in active concert with them, be preliminarily and permanently enjoined from committing the acts alleged herein in violation of 17 U.S.C. § 501;
> b. Defendant be required to pay Plaintiff his actual damages and [Defendant's] profits attributable to the infringement, or, at Plaintiff's election, statutory damages, as provided in 17 U.S.C. § 504;
> c. Plaintiff be awarded his attorneys' fees and costs of suit under the applicable statutes sued upon;
> d. Plaintiff be awarded pre and post-judgment interest; and
> d. Plaintiff be awarded such other and further relief as the Court deems just and proper.

Doc. No. 1 at 5.

On June 22, 2020, Defendant was served with the complaint. Doc. No. 11 at 2. Defendant did not appear or respond to the complaint. On July 27, 2020, the Clerk entered a default against Defendant. Doc. No. 13. On October 6, 2020, Plaintiff filed a motion for entry of a final default judgment against Defendant (the "Motion"). Doc. No. 15.

4

## II.   <u>THE LAW</u>

### A.   Default Judgment

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by the civil rules, and that fact is made to appear by affidavit or otherwise, the Clerk enters a default. Fed. R. Civ. P. 55(a). The mere entry of a default by the Clerk does not in itself warrant the entry of a default judgment by the Court. Rather, before entering a default judgment, the Court must find that there is a sufficient basis in the pleadings for the relief requested. *Nishimatsu Constr. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.");[3] *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (same). Thus, the standard for reviewing a default judgment motion is "akin to [the standard] necessary to survive a motion to dismiss for failure to state a claim." *Surtain*, 789 F.3d at 1245 (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim.")).

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Complaints need not contain detailed factual allegations to support a default judgment motion, but there must be "more than an unadorned, the defendant-unlawfully harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Thus, when seeking a default judgment, a plaintiff should provide the Court with points and authorities containing citations to authority showing that the [p]laintiff's claim or claims include allegations of all the necessary elements required for entitlement to relief." *Johnson v. Cate*, No. 1:09–cv–00502–OWW–SMS, 2009 WL 2151370, at *2 (E.D. Cal. July 17, 2009). It is the plaintiff's burden to demonstrate, in a motion for default judgment, that the complaint's factual allegations are legally sufficient to establish one or more of its claims and to entitle it to the specific relief requested. *Id*.

### B.    Copyright Infringement

The plaintiff must demonstrate that he owned a copyright and the defendant copied the copyrighted work to establish a copyright infringement claim under 17 U.S.C. § 501. *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011). Pursuant to 17 U.S.C. § 504, an infringer of copyright is liable for

either actual damages and additional profits of the infringer or statutory damages. 17 U.S.C. § 504(a). Section 504(c) states:

> Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1). Thus, the copyright owner may elect to recover up to $30,000 instead of the owner's actual damages. *Id.* If the copyright owner sustains his burden of proving that the infringement was willful, then the court may increase the award of statutory damages to not more than $150,000. 17 U.S.C. § 504(c)(2).

### C.   Permanent Injunction

Under 17 U.S.C. § 502(a), a court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." A district court may grant preliminary injunctive relief if the moving party shows that: 1) it has a substantial likelihood of success on the merits; 2) irreparable injury will be suffered unless the injunction issues; 3) the threatened injury to the movant outweighs whatever damage the proposed

7

injunction may cause the opposing party; and 4) if issued, the injunction would not be adverse to the public interest. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004). The standard for a permanent injunction is the same as for a preliminary injunction except that the movant must show "actual success on the merits" instead of a "likelihood of success." *Id.* (citing *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987)).

"[W]hen a defendant is in default, the element of success on the merits is satisfied." *Virgin Records Am., Inc. v. Courson*, No. No. 3:07-cv-195-J-33MCR, 2007 WL 3012372, *2 (M.D. Fla. Oct. 12, 2007) (citing *Sony Music Entm't v. Global Arts Prods.*, 45 F. Supp. 2d 1345, 1347 (S.D. Fla. 1999)). "Copyright infringements are presumed to cause irreparable harm." *Id.* (citing *CBS, Inc. v. PrimeTime 24 J.V.*, 9 F. Supp. 2d 1333, 1344-45 (S.D.N.Y. 1998)).  Furthermore, when considering the public's interest, "injunctive relief is in the public interest, not only for the protection of copyrights, but also because of the public's interest in supporting creative pursuits while controlling costs passed on to the public when pirated copyrights cause lost revenues." *Id.*

## D.    Attorney's Fees

The Court may allow the recovery of reasonable attorney's fees and costs to the prevailing party under 17 U.S.C. § 505. In *Hensley v. Eckerhart*, 461 U.S. 424,

8

433 (1983), the Supreme Court stated that "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." This amount, commonly referred to as the lodestar, is then adjusted to reflect the "results obtained." *Id.* at 434. In determining the lodestar, a reasonable hourly rate is based on the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *Gains v. Dougherty Co. Bd. of Educ.*, 775 F.2d 1565, 1571 (11th Cir. 1985).

"The [fee] applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Norman v. Housing Auth. of Montgomery*, 836 F. 2d 1292, 1303 (11th Cir. 1988). Counsel's affidavit alone is generally not a sufficient basis for determining whether the fees and costs incurred are reasonable. "Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work. . . . [S]atisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits. Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate." *Id.* at 1299. However, the Court may use its own discretion and expertise to determine the appropriate hourly rate to apply for an attorney's fee award. *See Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)**;** *Norman*, 836 F.

2d at 1303; *see also Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1331 (M.D. Fla. 2002).

## III. <u>APPLICATION</u>

After careful review of the complaint and Motion, as well as the documents submitted therewith, sufficient evidence supports Plaintiff's claim of willful copyright infringement. It is recommended that the Court find the entry of default judgment and a permanent injunction warranted.

Plaintiff seeks statutory damages of $45,000.00. Doc. No. 15 at 10. Courts have "broad discretion" to determine statutory damages and may grant damages up to $150,000 for a willful violation of Section 501. *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990); 17 U.S.C. § 504(c)(2).

Plaintiff argues that $45,000.00 is an appropriate amount by providing evidence of actual damages and then applying a multiplier to arrive at statutory damages. Doc. No. 15 at  11; Doc. No. 15-1 at 1-5. Plaintiff contends that because the market value of the license is $3,000.00, a multiplier of five should be applied due to the scarcity of the work, and a multiplier of three should be applied to that due to Defendant's willful infringement. Doc. No. 15 at 11.

Plaintiff's declaration, although not particularly strong regarding damages, provides evidence supporting the request. Doc. No. 15-1 at 1-5.

Plaintiff states that he would have charged Defendant $3,000 for a licensing fee, but that this does not account for the Work's scarcity.[4] *Id.* at 3. Plaintiff's description of his unique technique and challenges in creating the Work support the conclusion that a multiplier of five is appropriate due to its scarcity, for a $15,000 licensing fee representing actual damages. *Id.* at 2-3; *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 392-94 (3d Cir. 2016) (verdict in copyright infringement case based on the fair market value approach was not excessive where expert testified as to the appropriateness of applying a multiplier to the license fee based on the scarcity and exclusivity of the work).

Defendant's default supports applying a multiplier of three to the actual damages to arrive at an appropriate amount of statutory damages, as Defendant's default admits its willfulness as pleaded in the complaint. *Corson v. Gregory Charles Interiors, LLC*, No. 9:19-CV-81445, 2020 WL 6323863, at *3 (S.D. Fla. Aug. 7, 2020) (in default copyright infringement case where the defendant

---

[4] Plaintiff's contradictory statements regarding whether he would license the Work do not preclude a finding that the market value of a license for the Work is $3,000. Doc. No. 15-1 at 3. In *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014), the court rejected the defendant's argument that "hypothetical-license" damages could not be awarded because it was undisputed that the plaintiff would not have licensed its software to competitors. "Although 'actual damages' can be awarded in the form of lost profits, hypothetical-license damages also constitute an acceptable form of 'actual damages' recoverable under Section 504(b)." *Id.* The market value of the plaintiff's injury based on a hypothetical-license theory is "'the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by [the infringer] of the plaintiff's work.'" *Id.* (quoting *Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 786 (9th Cir. 2006)).

used the plaintiff's photograph on its website without the plaintiff's permission, the plaintiff was entitled to a tripling of her actual damages as statutory damages, resulting in a damage award of $57,600.00); *Joe Hand Promotions, Inc. v. Alburl*, No. 5:18-CV-1935-LCB, 2020 WL 836844, at *6 (N.D. Ala. Feb. 20, 2020) ("Courts have generally upheld awards of three times the amount of the proper licensing fee as an appropriate sanction to ensure that the cost of violating the copyright laws is substantially greater than the cost of complying with them."); *Major Bob Music v. Stubbs*, 851 F. Supp. 475, 481 (S.D. Ga. 1994) (finding that where the defendant was warned several times about her potential liability for her infringing conduct, "an amount approximately three times what the Defendant would have paid to be licensed—is a modest, just and appropriate award under section 504(c)(1)."); *Nishimatsu*, 515 F.2d at 1206. A statutory damages award of $45,000 is within the broad range of awards in copyright infringement cases involving photographs used without a license on websites. *See Corson*, No. 9:19-CV-81445, 2020 WL 6323863, at *3; *Affordable Aerial Photography, Inc. v. VisitWPB.Com, Inc.*, No. 17-CV-81306-BB, 2018 WL 6519104, at *3 (S.D. Fla. Apr. 23, 2018) (awarding $54,000 in statutory damages after applying scarcity multiplier of six to licensing fee and multiplier of three due to defendant's willfulness); *Michael Grecco Prods., Inc. v. Enthusiast Gaming, Inc.*, No.

12

19-CV-06399-LHK, 2020 WL 7227199, at *10 (N.D. Cal. Dec. 8, 2020) (awarding $62,500 in statutory damages, representing five times the licensing fee); *Myeress v. Elite Travel Grp. USA*, No. 18-CV-340 (AJN), 2018 WL 5961424, at *3 (S.D.N.Y. Nov. 14, 2018) (awarding $20,000 where the plaintiff did not show lost revenue or defendant's profits).

As set forth above, regarding injunctive relief, Defendant's default establishes Plaintiff's success on the merits, and copyright infringement is presumed to cause irreparable harm. Defendant did not rebut this presumption. With respect to the remaining two elements for obtaining a permanent injunction, it is recommended that the Court find Plaintiff's injury outweighs whatever damage the injunction may cause Defendant and Plaintiff's proposed injunction is not adverse to the public interest.

In the complaint, Plaintiff seeks to enjoin "Defendant and its officers, agents, servants, employees, affiliated entities, and all of those in active concert with them . . . ." Doc. No. 1 at 5. "Under the Federal Rule of Civil Procedure Rule 65, a preliminary injunction only binds those who receive 'actual notice' of it and who are either parties or 'other persons who are in active concert or participation with' the parties." *Worsham v. TSS Consulting Grp., LLC*, No. 6:18-cv-1692-RBD-LRH, 2019 WL 7482221 at *2 (M.D. Fla. Sept. 18, 2019) (quoting Fed. R. Civ. P.

65(d)(2)(C)). In *Worsham*, the Court denied the plaintiff's request for an injunction against others in concert with the defendants because "there is no evidence these unnamed 'others' received notice for a preliminary injunction or that their rights and interests were adjudicated." *Id.*

Here, the complaint requests that an injunction be entered against Defendant and "all of those in active concert with them . . . ." Doc. No. 1 at 5. As in *Worsham*, there is no evidence that these people or entities received notice or that their rights and interests were adjudicated. Thus, it is recommended that the injunction be denied as to "all of those in active concert with" Defendant.

Plaintiff seeks an award of attorney's fees in the amount of $4,262.00. Doc. No. 15 at 12. This includes billing rates of $395 per hour for one attorney ("Attorney A"), $350 per hour for another attorney ("Attorney B"), $200 per hour for paralegals, and $175 per hour for a legal assistant. Doc. No. 15-2 at 2. No information is provided as to the attorneys', paralegals', and legal assistant's qualifications or experience. Doc. Nos. 15, 15-2.

Although the billing rates for the attorneys are reasonable, "[a] review of the case law reveals that the median hourly rate for paralegals in Florida is $125." *Plum Creek Tech., LLC v. Next Cloud, LLC*, No. 8:19-CV-1974-T-60CPT, 2020 WL 3317897, at *4 (M.D. Fla. June 3, 2020), *report and recommendation adopted*, No. 8:19-

CV-1974-T-60CPT, 2020 WL 3288033 (M.D. Fla. June 18, 2020) (reducing requested hourly rate for paralegals from $175 and $150 to $125 where the movant's "submissions do not provide any information regarding the skill level, training, or experience of the two paralegals."). Based on the undersigned's expertise, the issues involved in this case, and the lack of evidence regarding the paralegals' experience, a reasonable hourly rate for the paralegals here is $125. For the same reasons, a reasonable hourly rate for the legal assistant is $100. *See Hurst v. Seterus, Inc.*, No. 2:15-CV-4-FTM-29CM, 2015 WL 3915562, at *2 (M.D. Fla. June 25, 2015) (reducing requested hourly rate of $110 for paralegal and legal assistant to $75 where "[n]o documentation was provided in support of the[ paralegal's and legal assistant's] individual experience or their hourly rates.").

Plaintiff claims the following numbers of hours were reasonably expended in this case:

| Attorney A | Attorney B | Paralegals | Legal Assistant |
|------------|------------|------------|-----------------|
| .1 | 5.8[5] | 7.8 | .7 |

After reviewing the timesheets, the number of hours claimed are reasonable. The following table sets forth the lodestar:

---

[5] The timesheets supporting the claims for the number of hours worked demonstrate that the Attorney B worked 7.4 hours, but Plaintiff asks for 5.8 hours to be compensated. Doc. No. 15 at 12; Doc. No. 15-2 at 4-12.

| Timekeeper | Hours Reasonably Expended | Reasonable Hourly Rate | Total |
|---|---|---|---|
| Attorney A | .1 | $395 | $39.50 |
| Attorney B | 5.8 | $350 | $2,030.00 |
| Paralegals | 7.8 | $125 | $975.00 |
| Legal Assistant | .7 | $100 | $70.00 |

Based on the lodestar, $3,114.50 is a reasonable award of attorney's fees.

Finally, Plaintiff requests an award of costs of $493.68, representing the filing fee ($400.00), costs for "priority mail" ($24.68), and his cost of service of process ($69.00). Doc. No. 15 at 13; Doc. No. 15-2 at 1, 11. Costs for filing fees and service of process are recoverable. 28 U.S.C. § 1920(1).[6] No authority is provided supporting an award of costs for priority mail, and thus it is recommended that these costs be denied.

## IV.   CONCLUSION

Based on the above, it is **RECOMMENDED** that the Motion (Doc. No. 15) be **GRANTED IN PART AND DENIED IN PART** as follows:

1.   That judgment be entered against Defendant in the amount of $48,579.50 ($45,000.00 in damages, $3,114.50 in attorney's fees, and $465.00 in costs);

---

[6] Plaintiff admits that the prevailing party may recover no more than the statutory maximum for service than that charged by the United States Marshalls, which Plaintiff states is currently $65.00 per hour. Doc. No. 15 at 13.

2.      That Defendant and its officers, agents, servants, employees, and its affiliated entities be permanently enjoined from infringing on copyright VA 2-044-621; and

3.      In all other respects, that the Motion be **DENIED**.

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. Failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida, on March 1, 2021.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party